UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

HOWARD T. LEDDEN,

      Plaintiff,

    v.

MICHELLE SMITH, TERRIL FLORCYK,
MARY PEREZ, LINN M. DINGLE and
KRISTIN RISH,

      Defendants.

Civil File No. 06-2332 (MJD/SRN)

**REPORT AND RECOMMENDATION**

---

Plaintiff, a prisoner at the Minnesota Correctional Facility at Oak Park Heights, Minnesota, initiated this case by filing a complaint seeking relief under 42 U.S.C. § 1983 for alleged violations of his federal constitutional rights.  (Docket No. 1.)  The matter has been assigned to the undersigned Magistrate Judge of the District Court for initial screening pursuant to 28 U.S.C. § 1915A, and for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.

Plaintiff did not pay the $350 filing fee for this action when he filed his complaint, (see 28 U.S.C. § 1914(a)), but instead applied for leave to proceed in forma pauperis, ("IFP").  (Docket No. 2.)  By order dated June 14, 2006, (Docket No. 3), Plaintiff was advised that his IFP application would not be addressed, and his case would not go forward, until after he paid an initial partial filing fee of $8.32, as required by 28 U.S.C. § 1915(b)(1).  Plaintiff has now paid his initial partial filing fee, (Docket No. 9), so the case is before the Court at this time for further consideration of Plaintiff's IFP application, and for initial screening of Plaintiff's complaint under § 1915A.

For the reasons discussed below, the Court finds that Plaintiff has failed to plead a cause of action on which relief can be granted.  The Court will therefore recommend that Plaintiff's IFP application be denied, and that his action be summarily dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## I.  BACKGROUND

This lawsuit stems from a series of events that allegedly occurred during the first six months of 2006, while Plaintiff was confined at the Minnesota Correctional Facility at Stillwater, Minnesota, ("MCF-STW").  Plaintiff alleges that on January 24, 2006, certain "unknown parties," (presumably prison officials at MCF-STW), searched his cell and seized certain "legal papers" that Plaintiff was keeping there.  Those papers led prison officials to conclude that Plaintiff had filed bogus U.C.C. lien documents against an assistant county attorney for Ramsey County, Minnesota.

After the fraudulent lien materials were discovered, Plaintiff was interrogated and placed in segregated confinement.  Several weeks later, formal disciplinary proceedings were brought against Plaintiff.  According to the "Notice of Violation," which described the charges against Plaintiff, the "legal papers" seized from his cell included "several blank copies of UCC forms and information on how to file frivolous liens."  The Notice of Violation also indicated that other inmates had told prison investigators that Plaintiff "was 'instructing' offenders on how to file UCC liens."  (Attachment to Complaint, [Docket No. 1].)

A hearing was scheduled for the disciplinary charges against Plaintiff, and he asked to see the investigation reports pertaining to the charges before the hearing began.  That request was denied by Defendant Michelle Smith, who is identified as a "Disciplinary Dept. Supervisor."  Smith allegedly told Plaintiff that he could review those reports at the time of

2

the hearing.  (Complaint, ¶ 5.)

Plaintiff's disciplinary hearing was conducted on March 15, 2006.  During the course of the hearing, Defendant Kristin Rish, (presumably a prison official at MCF-STW), testified that Plaintiff had given instructions to other inmates on how to file frivolous liens.  Plaintiff alleges that the names of those other inmates were not disclosed to him, so he did not have an opportunity to question them.  (Id., ¶ 11.)

Plaintiff contends that the lien filings at issue "are legal," and "not frivolous," because they bear the signature of Mary Kiffmeyer, (the Minnesota Secretary of State).  He further contends that he did not actually file one of the bogus lien documents that he was accused of filing.  (Id., ¶s 12-13.)  Nevertheless, Plaintiff was found guilty of violating prison disciplinary rules, and Defendant Smith then sentenced him to 360 days in segregated confinement.[1]  (Id., ¶ 16.)

Plaintiff also alleges that in May 2006, he placed three sealed envelopes, marked as "Legal Mail," in the prison's outgoing mail.  Those envelopes allegedly "were intercepted by person(s) in the mail room, and were opened and read by prison officials."  (Id., ¶ 18.)  Plaintiff sent a "kite," (a written note), asking about his mail, and Defendant Mary Perez, a Mailroom Supervisor, informed him that "the reason for the delay of [Plaintiff's] outgoing mail was that they had to 'review' [his] mail for UCC lien activity."  (Id., ¶ 20.)

Plaintiff is now claiming that his federal constitutional rights were violated as follows:

---

[1]  Plaintiff also alleges that his prison sentence for his underlying criminal offense was extended by 360 days, apparently because the disciplinary sanctions imposed against him included a loss of some good time credits.  However, Plaintiff cannnot challenge the extension of his sentence in the present civil rights action, because habeas corpus is the exclusive federal remedy by which a state prisoner can challenge the fact or duration of his confinement.  Heck v. Humphrey, 512 U.S. 477, 481(1994).

(1) That some unidentified individual(s) violated his rights under the Fourth Amendment by searching his cell, and seizing incriminating evidence, without a search warrant.

(2) That Defendant Michelle Smith violated his right to due process by refusing to provide him with copies of the prison investigation reports in advance of his disciplinary hearing.

(3) That some unidentified individual(s) violated his right to due process by failing to disclose the names of the inmates who purportedly said that Plaintiff had been offering instructions on how to file frivolous liens.

(4) That some unidentified individual(s) deprived him of his constitutional right of access to the courts.

(5) That Defendant Michelle Smith violated his Eighth Amendment rights by causing him to be placed in segregated confinement, as a sanction for his violations of prison rules.

(6) That some unidentified individual(s) violated his constitutional rights by reviewing his outgoing "legal mail."

Plaintiff is seeking a judgment that would (a) acknowledge the alleged violations of his constitutional rights, (b) provide injunctive relief to undo the alleged violations of his constitutional rights, and (c) award him compensatory and punitive damages.

## II.  DISCUSSION

Because Plaintiff is a prisoner who is seeking redress from government employees, his pleading is subject to preliminary "screening" pursuant to 28 U.S.C. § 1915A.  That statute, which is part of the Prison Litigation Reform Act of 1995, ("the PLRA"), requires federal courts to screen the pleadings in every civil action brought by a prisoner against

4

governmental entities and/or employees "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A(a). The Court must determine which aspects of the pleading are actionable and should be allowed to proceed. If the pleading fails to state a legally cognizable claim, the action must be dismissed. 28 U.S.C. § 1915A(b)(1). Here, the Court finds that Plaintiff's complaint does not state any cause of action on which relief can be granted.

To state an actionable civil rights claim under 42 U.S.C. § 1983, as Plaintiff is attempting to do here, a complainant must allege historical facts, which if proven true, would demonstrate that the named defendant(s) violated the complainant's federal constitutional rights while acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Although federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law." Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980).

Furthermore, civil rights claimants must plead facts showing each named defendant's personal involvement in alleged constitutional wrongdoing. Ellis v. Norris, 179 F.3d 1078, 1079 (8th Cir. 1999). See also Beck v. LaFleur, 257 F.3d 764, 766 (8th Cir. 2001) (upholding summary dismissal of prisoner's civil rights claims against prison officials, because his complaint "failed to allege sufficient personal involvement by any of defendants to support such a claim"). Thus, in order to state a § 1983 claim, a complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, that purportedly violated the plaintiff's federal constitutional rights.

A. Fourth Amendment Claim

Plaintiff initially seeks relief for an alleged violation of his Fourth Amendment rights,

5

based on the search of his cell, and the seizure of incriminating evidence.  This claim must be rejected for two reasons.

First, there are no allegations suggesting that any of the named Defendants played any role in the search of Plaintiff's cell, or the seizure of his property.  Indeed, the complaint specifically indicates that Plaintiff does not know who searched his cell.  Therefore, Plaintiff has failed to state a Fourth Amendment claim against any of the named Defendants.

Second, the Fourth Amendment does not protect prisoners from searches and seizures in their cells.  In <u>Hudson v. Palmer</u>, 468 U.S. 517, 526 (1984), the United States Supreme Court concluded that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell," and, therefore, "<u>the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell</u>."  (Emphasis added.)  Thus, even if Plaintiff could show that one or more of the named Defendants participated in the alleged search and seizure in his cell, he still would have no actionable Fourth Amendment claim.

B.  <u>Due Process Claims</u>

Plaintiff also claims that his constitutional right to due process was violated during the course of his prison disciplinary proceedings, because (a) Defendant Michelle Smith refused to give him a copy of the prison investigation reports before the hearing began, and (b) some unidentified individual(s) failed to disclose the names of the inmates who purportedly said that Plaintiff had been offering instructions on how to file frivolous liens. The Court finds, however, that Plaintiff has failed to plead an actionable due process claim for at least two reasons.

First, the allegations in Plaintiff's complaint do not show that he was entitled to the

6

procedural benefits of due process in connection with the disciplinary proceedings that were brought against him.  To maintain an actionable due process claim, a prisoner must allege, (and ultimately prove), that he has been deprived of some constitutionally protected interest.   Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake").   A constitutionally protected interest will be found, and the protections of due process will therefore come into play, only when a prisoner has suffered the type of unusual hardship contemplated in Sandin v. Conner, 515 U.S. 472 (1995).

In Sandin, the Supreme Court held that a prisoner cannot show that he has been deprived of a liberty interest warranting due process protection, unless he can show that he suffered an "atypical and significant hardship... in relation to the ordinary incidents of prison life."  Id. at 484.  Our Court of Appeals has interpreted Sandin to mean that prisoner due process rights are implicated only when there have been "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996) (emphasis added.)

Plaintiff's current complaint does not state an actionable due process claim because there are no factual allegations showing that he has been subjected to the type of unusual hardship that Sandin requires.  The only "hardship" described in the complaint is Plaintiff's removal from the general prison population, and his reassignment to segregated confinement.  It is well-settled, however, that, for due process purposes, assignment to segregated confinement is considered to be a normal and expectable aspect of a prison sentence.  Therefore, segregated confinement alone is not an "atypical and significant

hardship" that can give rise to a protected liberty interest.  See Portley-el v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002) ("[w]e have consistently held that administrative and disciplinary segregation are not atypical and significant hardships under Sandin"); Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) (reiterating that "demotion to segregation, even without cause, is not itself an atypical and significant hardship").  See also Howard v. Collins, No. 97-1642 (8th Cir. 1997), 1997 WL 710314 (eight month stint in "ad seg" would not support due process claim).  Because Plaintiff has not shown that he has suffered any atypical and significant hardship that caused him to be deprived of a protected liberty interest, he was not entitled to the procedural benefits of due process.  Therefore, Plaintiff has not pleaded an actionable due process claim.

Furthermore, even if Plaintiff were entitled to due process, he has failed to identify any constitutionally significant deficiency in the procedural benefits that were afforded to him in connection with his disciplinary proceedings.  To satisfy the requirements of due process, a prison disciplinary proceeding must provide only the simple procedural benefits prescribed in Wolff v. McDonnell, 418 U.S. 539 (1974).  Those required benefits are (1) advance written notice of the charges, (2) an opportunity to present witness testimony and other evidence, and (3) a written explanation of the ultimate resolution of the charges.  Espinoza v. Peterson, 283 F.3d 949, 951-52 (8th Cir.), cert. denied, 537 U.S. 870 (2002).  See also Allen v. Reese, 52 Fed.Appx. 7, 8 (8th Cir. 2002) (unpublished opinion) (holding that prisoner's right to due process was satisfied, as he was given (i) written notice of the charges against him, (ii) the right to call witnesses, and (iii) a written report of the final decision on the charges against him), cert. denied, 540 U.S. 849 (2003).

In this case, Plaintiff has not alleged that he was deprived of any of the limited

procedural benefits that the Constitution requires for prison disciplinary proceedings.  He obviously received written notice of the charges against him, as he has attached a copy of that notice to his complaint; and he has not alleged that any of the Defendants forbade him from calling witnesses, nor has he alleged that he was not notified of the final decision on the charges against him.  Therefore, even if Plaintiff had alleged that he was deprived of a liberty interest warranting the protections of due process, (which, as discussed above, he clearly has <u>not</u> done), he still would not have an actionable due process claim, because it appears that the minimal due process requirements for a prison disciplinary proceeding were met in this case.

      C.  <u>Eighth Amendment Claim</u>

Plaintiff further claims that Defendant Smith violated his Eighth Amendment rights, by imposing a disciplinary "sentence" of 360 days in segregated confinement.  This claim fails, because segregated confinement by itself, even for extended periods, is not considered "cruel and unusual punishment" for Eighth Amendment purposes.  <u>See</u> <u>Brown v. Nix</u>, 33 F.3d 951, 955 (8th Cir. 1994) (prisoner's nine-year term of segregated confinement for multiple disciplinary infractions did not violate the Eighth Amendment).  <u>See also</u> <u>Herron v. Schriro</u>, 11 Fed. Appx. 659, 662, (8th Cir.) (unpublished opinion) (upholding district court's rejection of prisoner's Eighth Amendment claim based on thirteen years of segregated confinement), <u>cert</u>. <u>denied</u>, 534 U.S. 1059 (2001).

      D.  <u>Access to the Courts Claim</u>

Plaintiff's claim that he was deprived of his constitutional right of access to the courts must be rejected for several reasons.  First, there are no allegations in the complaint describing any incident(s) or event(s) that hindered Plaintiff's ability to contact the courts.

In fact, there are no allegations showing that Plaintiff has been deprived of any opportunity to pursue any legal right.[2]   Second, even if Plaintiff's access to the courts was somehow hindered, there are no allegations suggesting that any such hindrance was caused by any of the named Defendants.   Finally, (and perhaps most significantly), there are no allegations describing any <u>actual injury</u> that Plaintiff allegedly suffered as result of any alleged interference with his right of access to the courts.   Because Plaintiff's complaint does not identify any actual injury to his substantive legal rights, he has failed to state an actionable access-to-the-courts claim.   <u>Lewis v. Casey</u>, 518 U.S. 343, 349 (1996).

E.   Review of "legal mail"

Plaintiff finally claims that his constitutional rights were violated because some unidentified individual(s) allegedly reviewed three pieces of his outgoing mail that purportedly qualified as "legal mail."   This claim fails because, once again, there are no allegations suggesting that any named Defendant was personally involved in the allegedly improper review of Plaintiff's mail.   Plaintiff alleges that Defendant Mary Perez informed him of the reason why his mail was reviewed, but it is not alleged that Perez, or any of the other named Defendants, personally reviewed the correspondence at issue.

Even if Plaintiff had alleged that one or more of the named Defendants personally opened and read the contents of his outgoing mail, his legal mail claim would, undoubtedly, still fail.   Although prisoners do have a limited right to maintain the confidentiality of certain

---

[2]  If Plaintiff is claiming that his constitutional rights have been violated because he is no longer able to file bogus UCC liens from prison, his claim is so frivolous that it warrants no discussion.

communications with attorneys, (and, possibly, the courts[3]), that right is not absolute, and there are no allegations showing that any violation of that right occurred in this case.

The Court notes, in particular, that there are no allegations in the complaint which show that the correspondence at issue actually was "legal mail."  The Court of Appeals has indicated that the special protections afforded to "legal mail" apply only to communications that are covered by the attorney-client privilege.  See Jensen v. Klecker, 648 F.2d 1179, 1182 (8th Cir.1981) (identifying "[p]rivileged prisoner mail" as "mail to or from an inmate's attorney and identified as such").  Because Plaintiff's complaint does not allege that he was attempting to correspond with his attorney, it does not state an actionable claim for wrongful interference with "legal mail."

Furthermore, federal courts have consistently recognized that prisoners' constitutional rights, (particularly their First Amendment rights), may be limited because of the need to maintain order, security and discipline in penal institutions.  See Smith v. Delo, 995 F.2d 827, 830 (8th Cir.1993) (recognizing a legitimate security interest in monitoring outgoing mail), cert. denied, 510 U.S. 1052 (1994).  In this case, Plaintiff's own submissions show that prison officials had good reason to be especially concerned about Plaintiff's outgoing mail – namely because he had been found guilty of abusing his mail privileges in the past, by filing fraudulent lien documents against government officials.  Therefore, even

---

[3]  It has been suggested that the special protections afforded to "legal mail" do not extend to correspondence sent to or from a court, because such correspondence normally becomes part of the court's public record, and thus an inmate has no legitimate expectation of confidentiality as to such correspondence.  See Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987) (questioning whether court documents should receive special protection under the First Amendment, as they are "public document[s], which prison personnel could if they want inspect in the court's files").

if Plaintiff had alleged some specific facts showing that some named Defendant(s) had improperly inspected correspondence addressed to his legal counsel, (and again, there are no such allegations in the complaint), it is doubtful, given Plaintiff's disciplinary history, that his legal mail claim would be viable.

## III.  CONCLUSION

For the reasons discussed above, the Court concludes that Plaintiff has failed to state any cause of action on which relief can be granted, and that this case must therefore be dismissed pursuant to 28 U.S.C. § 1915A(b).  Because Plaintiff has not stated any actionable claim in his complaint, his application for leave to proceed IFP must be denied. See 28 U.S.C. § 1915(e)(2)(B)(ii).  Notwithstanding the dismissal of this action, Plaintiff shall remain liable for the unpaid balance of the $350 filing fee.[4]  To date, he has paid only $8.32, so he still owes $341.68.  Prison officials will have to deduct that amount from his prison trust account and pay it to the Clerk of Court in the manner prescribed by 28 U.S.C. § 1915(b)(2).  Lastly, the Court will recommend that the dismissal of this action be counted as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g).

---

[4] Under the PLRA, prisoners may be excused from pre-paying the full amount of the applicable filing fee before filing an action.  However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee."   In other words, prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee.  Ashley v. Dilworth, 147 F.3d 715, 716 (8th Cir. 1998) ("[t]he purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time").  Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee.  See In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

## IV.  RECOMMENDATION.

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

1.  Plaintiff's application for leave to proceed in forma pauperis, (Docket No. 2), be

**DENIED**;

2.  This action be **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1);

3.  Plaintiff be required to pay the unpaid balance of the Court filing fee, namely

$341.68, in accordance with 28 U.S.C. § 1915(b)(2); and

4. The dismissal of this action be counted as a "strike" against Plaintiff for purposes

of 28 U.S.C. § 1915(g).

Dated: August 31, 2006

 s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **September 18, 2006,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.